Opinion issued July 6, 2007 















Opinion
issued July 6, 2007










 

 

 

 




 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-06-00596-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



BRIAN NEIL VALLEJO, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 

 



On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 1048363

 








 



MEMORANDUM OPINION

 

Appellant Brian Neil Vallejo pleaded
not guilty to the first-degree felony offense of aggravated assault.  See
Tex. Pen. Code Ann. § 22.02 (Vernon Supp. 2006).  A jury found Vallejo guilty and assessed punishment at
thirty-five years’ confinement.  In three
issues, Vallejo contends (1) the identification evidence is legally and
factually insufficient to support his conviction for aggravated assault, (2)
the trial court erred in denying his request for a jury charge instruction on
the lesser-included offense of assault, and (3) his trial counsel was
ineffective in failing to contest the admission of a gun, and in failing to
contest the admission of a witness’s in-court identification testimony.  We conclude that
(1) the identification evidence is legally and factually sufficient to support Vallejo’s conviction, (2) the trial court did not err in denying
Vallejo’s request for an instruction on the
lesser-included offense of assault, and (3) Vallejo has failed to demonstrate that he
received ineffective assistance of counsel at trial.  We therefore affirm. 

Background

          On
the night of November 27, 2005, Phillip Pararuan went to a bar in downtown Houston with some
friends.  Pararuan testified that he
drank two or three beers during the course of the night but he was not
drunk.  Pararuan exited the bar when it
closed at 2:00 a.m., and he waited with his friend Tony Keo on the sidewalk
outside.  While Pararuan and Keo were
waiting, a man named Darrick Coates bumped into Pararuan and asked if he had a
problem.  Pararuan responded, “[N]o, I
don’t have a problem.  Don’t worry about
it.  It’s cool.”  Pararuan and Coates exchanged some additional
words and Coates walked away after a few minutes.  

Pararuan and Keo then started walking
toward the parking lot behind the bar. 
Pararuan and Keo saw Coates again when they arrived at the parking
lot.  Pararuan then heard someone yell
something about a gun.  When Pararuan
turned his head, he saw Vallejo
walking quickly toward him with a gun in his hand.  Vallejo
fired one shot in the air and then struck Pararuan on the back of the head with
the gun as he was turning to run away. 
The gun fired a second time when Vallejo
struck Pararuan on the head.  When
Pararuan regained consciousness, Keo was pulling him away from the scene.  Police arrived shortly thereafter, and Keo
told the officers that Vallejo
and Coates were driving a green Cadillac. 
As a result of the incident, Pararuan sustained a cut on the back of his
head, a broken nose, temporary paralysis in his right leg lasting three hours,
and a headache lasting one week.  

Several police officers working near
the parking lot on the night of the incident heard the gunshots and immediately
ran to the scene.  A large crowd gathered
around the parking lot pointed the officers to a green Cadillac.  When Officer T. Nguyen first saw the
Cadillac, Vallejo and Coates were standing outside of the vehicle and they had
the hood open.  Nguyen ordered Vallejo
and Coates to freeze and put their hands up, but they did not comply.  Instead, Vallejo and Coates closed the hood,
got inside the Cadillac, and attempted to exit the parking lot.  

Officer C. Sandoval arrived at the
scene while Vallejo and Coates were attempting to exit the parking lot.  Sandoval and Nguyen stopped the Cadillac when
it began backing up after attempting to turn the wrong way down a one-way street.  The officers then observed Vallejo open the driver’s side door and throw
a gun under the Cadillac.  Sandoval and
Nguyen pulled Vallejo and Coates out of the Cadillac and placed them under
arrest.

Officer R. Schindler arrived at the
scene shortly thereafter and interviewed Keo. 
Schindler testified that he accompanied Keo to the vehicle in which the
police held Vallejo.  Keo immediately identified Vallejo as the man who struck Pararuan with
the gun.

          Officer
Brenham recovered the gun that Vallejo
threw under the Cadillac.  Brenham
testified that the gun had thirteen live rounds in the magazine when he found
it, but can hold nineteen rounds if fully loaded.  The gun also had an empty shell casing inside
the chamber, which indicated that the gun had malfunctioned the last time it
was fired.  Brenham testified that the
blow to Pararuan’s head could have caused the malfunction.  

Legal and Factual Sufficiency

In his first issue, Vallejo contends the identification evidence
is legally and factually insufficient to support his conviction.  

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795, 798 (Tex.
Crim. App. 2005).  The standard is the
same for both direct and circumstantial evidence cases.  King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).  We do not weigh any evidence, or evaluate the
credibility of any witnesses, as this was the function of the trier of fact.  See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999); Adelman v. State,
828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim.
App. 1991).  Instead, our duty is to
determine whether both the explicit and implicit findings of the trier of fact
are rational by viewing all the evidence admitted at trial in the light most
favorable to the verdict.  See Adelman, 828 S.W.2d at 422.  In so doing, any inconsistencies in the
evidence are resolved in favor of the verdict. 
Matson, 819
S.W.2d at 843.

When conducting a factual
sufficiency review, we view all of the evidence in a
neutral light.  Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App.
1999).  We will set aside the verdict
only if (1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000).  Under the first prong
of Johnson, we cannot
conclude that a verdict is “clearly wrong” or “manifestly unjust” simply
because, on the quantum of evidence admitted, we would have voted to acquit had
we been on the jury.  Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006).  Under the second prong
of Johnson, we cannot
declare that a conflict in the evidence justifies a new trial simply because we
disagree with the jury’s resolution of that conflict.  Id.  Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury’s verdict. 
Id.  In conducting a factual
sufficiency review, we must also discuss the evidence
that, according to the appellant, most undermines the jury’s verdict.  See Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).  

We may not re-weigh the evidence and substitute
our judgment for that of the fact-finder. 
King v. State, 29
S.W.3d 556, 562 (Tex.
Crim. App. 2000).  The fact-finder alone
determines what weight to place on contradictory testimonial evidence because
that determination depends on the fact-finder’s evaluation of credibility and
demeanor.  Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim.
App. 1997).  As the determiner of the
credibility of the witnesses, the fact-finder may choose to believe all, some,
or none of the testimony presented.  Id.
at 407 n.5.

A person commits assault
if the person intentionally, knowingly, or recklessly causes bodily injury to
another.  Tex. Pen. Code Ann. § 22.01 (Vernon Supp. 2006).  A person commits aggravated assault if the
person commits assault as defined in section 22.01 of the Texas Penal Code, and
the person uses or exhibits a deadly weapon during the commission
of the assault.  Id.
§ 22.02.

The record in this case reflects that Pararuan
first saw Vallejo
in the parking lot after the confrontation with Coates in front of the
bar.  Pararuan testified that Vallejo was about five to
eight feet away and walking toward him with a gun.  Pararuan then turned to run and Vallejo immediately struck
him on the back of the head with the gun. 
Officer Brenham interviewed Pararuan at the hospital after the incident
and Pararuan told Brenham that he was not sure that he would be able to
identify Vallejo because he blacked out when Vallejo struck him with
the gun.  Pararuan, however, confidently
identified Vallejo
at trial.  

Pararuan testified that he drank two
or three beers on the night of the incident but he was not drunk.  Pararuan also testified that his friends told
him that he was drunk on the night of the incident, but speculated that they
were probably just teasing him because he does not drink very often.  Keo testified that Pararuan was not
drunk on the night of the incident.  

Keo saw Vallejo
on the sidewalk in front of the bar during Pararuan’s confrontation with
Coates, and in the parking lot when Vallejo
struck Pararuan with the gun.  When Keo
first noticed that Vallejo was walking toward
Pararuan in the parking lot, he could not tell that Vallejo was holding a gun because the
lighting was not very good.  Keo realized
that Vallejo was holding a gun when Vallejo fired the warning
shot and walked closer to Pararuan.  Keo
testified that he was able to see what Vallejo
looked like on the night of the incident, and Vallejo was about eight feet away from him
when he fired the warning shot.  Keo saw Vallejo strike Pararuan
with the gun, and then run toward the green Cadillac with Coates.  Keo identified Vallejo at the scene and at trial.  

The prosecutor showed Keo a picture of Vallejo before the
trial.  The State admitted the picture
into evidence and Keo testified that he had no doubt that Vallejo was the man in the picture.  Keo testified that he did not drink any
alcohol on the night of the incident.  

          The
police officers who arrived at the scene were all directed to the green
Cadillac by the large number of people in the parking lot.  Sandoval and Nguyen both saw Vallejo open the driver’s side door of the
Cadillac and throw a gun under the vehicle. 
Brenham recovered the gun from under the Cadillac and Keo identified the
gun at trial as the same gun Vallejo
used to strike Pararuan.  Sandoval and
Nguyen identified Vallejo
at trial as the driver of the green Cadillac. 


          In
his appellate brief, Vallejo
points to general inconsistencies in the evidence and suggests that the
inconsistencies affect the credibility and sufficiency of the identification
evidence.  Specifically, Vallejo asserts that the
evidence surrounding the amount of time that elapsed between the two gunshots,
and the testimony of the police officers regarding the actions of Vallejo and
Coates in the parking lot, are inconsistent. 
While the evidence presented in this case is not perfectly consistent,
most of the evidence that Vallejo
identifies as inconsistent is not related to the identification evidence.  “Contradictions or
inconsistencies in the testimony between witnesses does not destroy, but only
affects the weight to be given, their testimony.”  Johnson
v. State, 454 S.W.2d 205, 206–07 (Tex. Crim. App. 1970);
accord Weisinger v. State, 775 S.W.2d 424, 429
(Tex. App.—Houston [14th Dist.] 1989, pet. ref’d.).    

Vallejo also asserts that Pararuan
misidentified him at trial.  The
following exchange occurred at trial:

[Pararuan:] When we came around the corner, everybody
was still gathered around like right when you turn and then I saw the guy that
I bumped into and a few other people just talking.  And then all of a sudden, I see him coming
out of nowhere with a gun.  He pointed
the gun, shot once in the air and then right before I could even realize,
turned around—

 

[Prosecutor:] Let my [sic] stop you there and ask you
a few more questions about the situation. 
You said you saw him?

 

[Pararuan:] Yes.

 

[Prosecutor:] Could you identify who you—identify who
you’re pointing to by an article of clothing?

 

[Pararuan:] The gray shirt with the black and
gray/blue tie.

 

[Prosecutor:] Your Honor, may the record reflect that
he identified the defendant?

 

This testimony demonstrates that
Pararuan identified Vallejo
as the person who committed the aggravated assault, not Coates.  Pararuan’s first statement in this excerpt is
clarified by the statements following it. 
Pararuan therefore did not misidentify Vallejo at trial.

          Additionally,
while Pararuan’s statement to Brenham at the hospital and the prosecutor’s act
of showing Vallejo’s picture to Keo before trial might have affected Pararuan’s
and Keo’s credibility, evaluating the credibility of the witnesses is the function of the
jury.  See Dewberry, 4 S.W.3d at 740; Cain, 958 S.W.2d at 407 n.5; Adelman, 828 S.W.2d at 421; Matson, 819 S.W.2d at 843.

Viewing the evidence in the light most favorable
to the verdict, we hold that a rational trier of fact could have found beyond a
reasonable doubt that Vallejo
committed the aggravated assault against Pararuan.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Drichas, 175 S.W.3d at 798.  Viewing the evidence in a neutral light, we
hold that the identification evidence is not so weak that the verdict is
clearly wrong and manifestly unjust, nor is the verdict against the great
weight and preponderance of the evidence. 
See Watson, 204 S.W.3d at 417; Johnson, 23 S.W.3d at 11; Ladd, 3 S.W.3d at 557.  The evidence is therefore legally and factually
sufficient to support the jury’s finding that Vallejo committed the aggravated assault
against Pararuan.  See, e.g., Brown v. State, 212 S.W.3d 851, 864–65 (Tex. App.—Houston
[1st Dist.] 2006, pet. filed) (holding that identification evidence was
factually sufficient to support defendant’s aggravated robbery conviction); Harmon v. State, 167 S.W.3d 610, 614
(Tex. App.—Houston [14th Dist.] 2005, pet. ref’d) (holding that identification evidence
was factually sufficient to support defendant’s aggravated
robbery conviction where complainant testified that she got a good look at
defendant and positively identified him in photographic
lineup); Apolinar v. State, 106
S.W.3d 407, 412–13 (Tex. App.—Houston [1st Dist.] 2003), aff’d, 155 S.W.3d 184, 191 (Tex. Crim. App. 2005) (holding that identification evidence was factually
sufficient to support defendant’s aggravated robbery conviction, even though complainant
demonstrated memory and vision problems at trial; complainant identified
defendant three times at trial, witness testimony was fairly consistent in
describing defendant’s appearance, and officers later found knife with blade
consistent with defendant’s arm wound); Wimbrey
v. State, 106 S.W.3d 190, 191–93 (Tex. App.—Fort Worth 2003,
pet. ref’d) (holding
that identification evidence was factually sufficient to support defendant’s
conviction for aggravated robbery where two witnesses separately identified
defendant in photographic lineup two months after robbery, and both identified
defendant at trial); Fluellen
v. State, 104 S.W.3d 152, 160–61 (Tex. App.—Texarkana 2003,
no pet.) (holding that identification evidence was factually sufficient to support
defendant’s conviction for delivery of controlled substance where
officer identified
defendant at trial, and officer identified defendant’s voice on audiotape of transaction).

Lesser-Included Offense

          In
his second issue, Vallejo
contends the trial court erred in denying his request for a jury charge
instruction on the lesser-included offense of assault.  The State responds that the record contains
no evidence to support the submission of such an instruction.

“When reviewing charge
errors, an appellate court must undertake a two-step review: first, the court
must determine whether error actually exists in the charge, and second, the
court must determine whether sufficient harm resulted from the
error to require reversal.”  Abdnor
v. State, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994).

We use a two-pronged test
to determine whether a defendant is entitled to an instruction on a lesser-included
offense.  See Guzman v. State, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006); Salinas v.
State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005).  The first step is to determine whether an
offense is a lesser-included offense of the alleged offense.  Hall v. State, No. PD-1594-02,
2007 WL 1343110, at *8 (Tex.
Crim. App. May 9, 2007); Salinas,
163 S.W.3d at 741.  This determination is
a question of law, and it does not depend on the evidence to be produced at the
trial.  Hall, 2007 WL
1343110, at *8.  

An offense is a lesser-included
offense if:


(1) it is established by
proof of the same or less than all the facts required to establish the
commission of the offense charged;


(2) it differs from the
offense charged only in the respect that a less serious injury or risk of
injury to the same person, property, or public interest suffices to establish
its commission;


(3) it differs from the
offense charged only in the respect that a less culpable mental state suffices
to establish its commission; or


(4) it consists of an attempt
to commit the offense charged or an otherwise included offense.



Tex.
Code Crim. Proc. Ann. art. 37.09 (Vernon 2006).  When
the greater offense may be committed in more than one manner, the manner
alleged will determine the availability of lesser-included offenses.  Hall, 2007 WL 1343110, at *5.


The second step is to
determine if there is some evidence that would permit a rational jury to find
that the defendant is guilty of the lesser offense but not guilty of the
greater.  Id. at *9; Salinas, 163 S.W.3d at 741; Feldman v. State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002).  Anything more than a scintilla of evidence may
be sufficient to entitle a defendant to a charge on the lesser offense.  Hall, 2007 WL 1343110, at *9.  “[I]t is not enough that the jury may
disbelieve crucial evidence pertaining to the greater offense, but rather,
there must be some evidence directly germane to the lesser-included offense for
the finder of fact to consider before an instruction on a lesser-included
offense is warranted.”  Hampton v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003).

A person commits the
lesser offense of assault if the person intentionally, knowingly, or recklessly
causes bodily injury to another.  Tex. Pen. Code Ann. § 22.01.  A person commits the greater offense of aggravated
assault if the person commits assault as defined in section 22.01 of the Texas
Penal Code, and the person uses or exhibits a deadly weapon
during the commission of the assault.  Id. §
22.02.

Here, Vallejo’s indictment reads as follows:

The duly organized Grand Jury of Harris
County, Texas, presents in the District Court of Harris County, Texas, that in
Harris County, Texas, BRIAN NEIL VALLEJO, hereafter styled the Defendant,
heretofore on or about NOVEMBER 27, 2005, did then and there unlawfully,
intentionally and knowingly cause bodily injury to Phillip Pararuan by using a
deadly weapon, namely, a firearm.

 

In proving that Vallejo committed aggravated assault, the State
established that Vallejo caused
bodily injury to Pararuan using a firearm. 
See id. §§ 22.01, 22.02.  Thus,
the only difference between assault and aggravated assault as applied to the
facts of this case is the deadly weapon element of aggravated assault.  Id.  Accordingly, because the elements of assault
are included within the proof necessary to establish aggravated assault,
assault is a lesser-included offense of aggravated assault.  See Tex. Code Crim. Proc. Ann. art. 37.09(1); Hall,
2007 WL 1343110, at *5 (“Assault
by committing bodily injury is a lesser-included offense of aggravated assault by inflicting serious bodily injury,
but not of aggravated
assault by
threat with a deadly weapon.”); Irving v. State, 176 S.W.3d 842, 845
(Tex. Crim. App. 2005) (“simple assault may be a lesser-included offense of aggravated assault in some cases”); Salinas,
163 S.W.3d at 741.

Having found that assault
is a lesser-included offense of aggravated assault, we next determine if there
is some evidence that would have permitted a rational jury to find that Vallejo was only guilty of assault.  Hall, 2007 WL 1343110, at *9; Salinas, 163 S.W.3d at 741; Feldman, 71 S.W.3d at 750.  The record in this case
contains no evidence to support the submission of a jury charge instruction on
the lesser-included offense of assault. 
Pararuan and Keo both testified that Vallejo
fired a shot in the air, and then struck Pararuan on the back of the head with
the gun.  Pararuan and Keo also testified
that the gun fired a
second time when it struck Pararuan’s head. 
See Tex. Pen. Code Ann.
§ 1.07(a)(17)(A) (Vernon Supp. 2006) (“‘Deadly weapon’ means: (A) a firearm or
anything manifestly designed, made, or adapted for the purpose of inflicting
death or serious bodily injury . . . .”); Tex.
Pen. Code Ann. § 46.01(3) (Vernon 2003) (“‘Firearm’ means any device
designed, made, or adapted to expel a projectile through a barrel by using the
energy generated by an explosion or burning substance or any device readily
convertible to that use.”); Ex parte Huskins, 176 S.W.3d 818, 820
(Tex. Crim. App. 2005) (“A
firearm is a deadly weapon per se.”); Thomas v. State, 821 S.W.2d 616, 620
(Tex. Crim. App. 1991) (holding that State need not prove that firearm is really capable of causing death, either in manner of its actual
use or in manner of its intended use to prove that it is deadly weapon).  The record contains no evidence negating the
deadly weapon element of aggravated robbery, and no evidence suggesting that Vallejo struck Pararuan with anything other than a
gun.  See
Walker
v. State, 95 S.W.3d 516, 519–20 (Tex. App.—Fort Worth 2002, pet.
ref’d).  Contrary to the assertions in Vallejo’s appellate brief, neither Pararuan’s
testimony that he turned away before Vallejo
struck him and thus did not see the object used to carry out the assault, nor
the injury Pararuan sustained when his face hit the ground, constitute evidence
that Vallejo did not use a firearm.  The trial court did
not err in refusing to submit a jury charge instruction on the lesser-included offense
of assault because, although the jury could have chosen to disbelieve evidence
that Vallejo used a firearm to carry out the assault, no evidence exists that
the assault was carried out in any other manner.  Pararuan and Keo both testified that Vallejo used the gun to strike Pararuan, and the
record contains no evidence that Vallejo
used his fist and not a firearm to strike Pararuan.  See
Guzman,
188 S.W.3d at 194–95 (holding that record contained no evidence to support
submission of instruction on lesser-included offense); Hampton, 109 S.W.3d at 441–42 (same); Skinner
v. State, 956 S.W.2d 532, 543–44 (Tex. Crim. App. 1997) (same); Walker, 95 S.W.3d at 519–20 (same). 

Ineffective Assistance of Counsel

          In his third issue, Vallejo
contends his trial
counsel was ineffective in failing to contest the admission of the gun, and in
failing to contest Keo’s in-court identification of Vallejo.  The State responds that Vallejo has failed to rebut the presumption that
counsel’s conduct was strategic.

To show ineffective
assistance of counsel, a defendant must demonstrate both (1) that his counsel’s
performance fell below an objective standard of reasonableness, and (2) that
there is a reasonable probability that, but for counsel’s unprofessional
errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S.
668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); Andrews v. State, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005).  “A reasonable probability is a probability
sufficient to undermine confidence in the outcome.”  Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  A defendant has the burden to establish both
of these prongs by a preponderance of the evidence, and a failure to make
either showing defeats his ineffectiveness claim.  Salinas, 163 S.W.3d at 740; Mitchell v.
State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).  We presume that counsel’s conduct falls
within the wide range of reasonable professional assistance, and we will find
counsel’s performance deficient only if the conduct is so outrageous that no competent
attorney would have engaged in it.  Andrews, 159 S.W.3d at 101.  We cannot speculate beyond the record
provided, so any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness.  Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App.
1999).  The Strickland test
applies to the punishment phase of a non-capital trial, as well as
guilt-innocence.  Hernandez v. State, 988 S.W.2d 770, 770–72 (Tex. Crim.
App. 1999).

In most cases, an undeveloped record on direct
appeal is insufficient to satisfy the dual prongs of Strickland because
the reasonableness of counsel’s decisions often involves facts not appearing in
the appellate record.  Rylander v.
State, 101 S.W.3d 107, 110
(Tex. Crim. App. 2003).  It is therefore critical that the defendant
obtain the necessary record in the trial court to rebut the Strickland
presumption that counsel’s conduct was strategic.  Thompson, 9 S.W.3d at 814; McCullough v. State, 116 S.W.3d 86, 92 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d).  This kind of record is best developed in a
hearing on a motion for new trial, or by application for a writ of habeas
corpus.  See Jackson
v. State, 973 S.W.2d 954,
957 (Tex. Crim. App. 1998); McCullough, 116 S.W.3d at 92. 
Without evidence of the strategy and methods involved concerning
counsel’s actions at trial, an appellate court should presume a sound trial
strategy.  See Thompson, 9 S.W.3d at 814.  If no reasonable trial strategy could justify
trial counsel’s conduct, counsel’s performance falls below an objective
standard of reasonableness as a matter of law, regardless of whether the record
adequately reflects trial counsel’s subjective reasons for acting as he
did.  Andrews, 159 S.W.3d at 102.

The record in this case
contains no evidence of counsel’s reasons for not contesting the admission of
the gun and Keo’s in-court identification of Vallejo.  We also cannot say that no reasonable trial
strategy could justify trial counsel’s conduct.  See
id.; see
also Tong
v. State, 25 S.W.3d 707, 713–14 (Tex. Crim. App. 2000)
(holding that counsel’s failure to object to victim impact testimony did not
constitute ineffective assistance of counsel when record
was silent as to counsel’s strategy); Thompson, 9 S.W.3d at 814;
(holding that counsel’s failure to object to State’s attempts to elicit hearsay
testimony did not constitute ineffective assistance of counsel when record was
silent as to counsel’s strategy); Batiste v. State,
217 S.W.3d 74, 83 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that
counsel’s failure to object to State’s insinuation during closing argument that
defendant sold drugs to children did not constitute ineffective assistance of
counsel when record was silent as to counsel’s strategy).  Vallejo has therefore failed to
rebut the Strickland presumption that counsel’s conduct was
strategic.  See Thompson, 9 S.W.3d at 814; McCullough, 116 S.W.3d at 92–93; see also Ex parte Varelas, 45 S.W.3d 627, 632 (Tex. Crim. App.
2001) (holding that reviewing court may not speculate as to why trial counsel
failed to request limiting instruction when record is silent, even if court has
difficulty understanding counsel’s inaction). 
Accordingly, Vallejo has not
satisfied the first prong of Strickland.  466 U.S.
at 687–88, 104 S. Ct. at 2064–65.

Conclusion

          We hold that (1) the identification evidence is legally and
factually sufficient to support Vallejo’s
conviction for aggravated assault, (2) the trial court did not err in denying Vallejo’s
request for a jury charge instruction on the lesser-included offense of assault,
and (3) Vallejo has failed to
demonstrate that he received ineffective assistance of counsel at trial.  We therefore affirm the judgment of the trial
court.   

 

                                                                             Jane Bland

                                                                             Justice

 

Panel consists of Justices Nuchia,
Hanks, and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).