**Mike Robert WEISINGER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. C14–88–1029–CR, A14–88–1030–CR.**

Court of Appeals of Texas,
Houston (14th Dist.)

July 20, 1989.

Discretionary Review Refused
Nov. 1, 1989.

Charles R. Young, Houston, for appellant.

Cheryl Boyd, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and PAUL PRESSLER and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Mike Robert Weisinger, appeals a judgment of conviction for the offense of aggravated sexual assault of a child. TEX.PENAL CODE ANN. § 22.021(b) (Vernon 1989). Appellant waived a trial by jury and his case was tried before the court. The trial court rejected appellant's "not guilty" plea, found him guilty as charged in the indictments, and assessed punishment at forty years confinement in the Texas Department of Corrections. We affirm.

In point of error one, appellant contends the trial court erred by failing to grant his motion to quash the enhancement portion of the indictments. Appellant specifically contends the trial court's failure to grant his pretrial motions to quash infringed upon his right to have a jury decide his fate. Appellant concludes that, since the

State could voir dire the jury regarding the range of punishment with an enhancement paragraph, his right to trial by jury was "chilled."

Appellant's argument, although novel, is without support in the record and is not briefed with legal authority. *See* TEX.R. APP.P. 74(f). However, the record shows that appellant actually requested trial before the court at the pretrial hearing *before* proceeding on his pretrial motions to quash. Moreover, prior to electing to try this case to the court, appellant filed notice that, if convicted by a jury, he desired the court to assess punishment.[1] Further, appellant never apprised the court that its ruling on the motions would affect his decision regarding a jury trial. At the pretrial hearing on the motions, the court asked appellant for his reasons for presenting these motions. Appellant's trial counsel replied, "We need to hear it now, Your Honor, because its a pretrial motion number one and number two, it does relate to the punishment in the case." The argument now raised on appeal was never mentioned until a hearing was held on appellant's motion for new trial.

 It is well settled that, in order to preserve a complaint for appellate review, the accused must present the trial court with a timely objection that is sufficient to apprise the court of the objectioner's complaint. *Goodrich v. State,* 632 S.W.2d 349 (Tex.Crim.App.1982); *Cisneros v. State,* 692 S.W.2d 78 (Tex.Crim.App.1985). Likewise, an objection raised on appeal which varies from the objection made at trial presents nothing for review. *Wagner v. State,* 687 S.W.2d 303, 306–7 (Tex.Crim. App.1984). Appellant's pretrial "objections" do not comport with his present contention nor was such contention preserved timely by the filing of a motion for new trial. Moreover, the contention set forth in his motion for new trial does not comport with the list of reasons in Rule 30 of the Texas Rules of Appellate Procedure for the

---

1. While the pretrial motion was overruled, the trial court subsequently found the enhancement paragraphs not true during punishment.

granting of a new trial.[2] Accordingly, point of error one is overruled.

■ In point of error two, appellant contends the trial judge committed reversible error by failing to grant his trial counsel's motion to withdraw.

Appellant's case was initially set for trial on September 7, 1988. Appellant's trial counsel presented his motion to withdraw to the court on the day the case was scheduled to be tried. Trial counsel alleged that a conflict of interest had developed between appellant and himself. Specifically, counsel asserted that he would be unable to zealously represent appellant because he had discovered certain facts which, if pursued, would subject him to possible violations of disciplinary rules and ethical considerations.

At the hearing on trial counsel's motion, counsel stated that he had spoken with a possible alibi witness named Tim Bearcat the day before trial. According to counsel, Bearcat initially did not want to testify nor have anything to do with appellant's case. However, when trial counsel mentioned that, should Bearcat's statement be damaging, Bearcat would probably not be called as a witness, Bearcat then made an allegedly harmful statement. However, counsel stated that by the next day, Bearcat recanted the earlier statement and expressed his desire to serve as a witness.[3] During the court's own examination of trial counsel, the following occurred:

Q. (Judge) So it's your professional opinion that if you put Mr. Bearcat on the witness stand today that he would testify falsely in regards to his information as to what he told you originally? If that makes sense.

A. (Counsel) It is my belief that if he takes the stand today that he will testify in a manner that is different than the way he told me yesterday and I believe it would be false testimony.

Q. (Judge) And you have reason to believe that the interview that you conducted with him on yesterday afternoon, the 6th, was the truth from him at that time?

A. (Counsel) I believe it to be the truth, Judge. I cannot offer any reason why other than my knowledge of the case and my experience as a lawyer but I believe that what he told me yesterday was the truth.

Disciplinary Rule 7–101 discusses the objectives that an attorney must observe while representing his or her client:

(A) A lawyer should not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B).

(B) In his representation of a client, a lawyer may:

(1) Where permissible, exercise his professional judgment to waive or fail to assert a right or position of his client.

(2) Refuse to aid or participate in conduct that he believes to be unlawful, even though there is some support for an argument that the conduct is legal.

Tex.Gov't.Code Ann. Title 2, Subtitle G App., Art. 10, § 9, D.R. 7–101 (Vernon 1989). Disciplinary Rule 7–102 provides that attorneys must represent their clients within the bounds of the law and, therefore, they are precluded from knowingly using perjured or false evidence. Tex. Gov't Code Ann. Title 2, Subtitle G App., Art. 10, § 9, D.R. 7–102 (Vernon 1989). Likewise, ethical considerations can also subject an attorney to disciplinary sanctions for presenting evidence that the attorney "knows, or from facts within his knowledge should know" that is "false,

---

**2.** Notwithstanding Rule 30(b)(2), the record does not demonstrate a material error calculated to injure his rights.

**3.** Trial counsel said that Bearcat's earlier statement revealed Bearcat's presence at appellant's place where he saw three Mexican boys go into appellant's room and shut the door. However,

Bearcat didn't actually see appellant "do anything" but Bearcat opined what he thought went on. By the date of trial, counsel said Bearcat told him that the boys did come by appellant's place to see appellant's bird. When counsel asked whether Bearcat saw the boys enter the bedroom, Bearcat said that he did not.

fraudulent or perjured." TEX.GOV'T CODE ANN. TITLE 2, SUBTITLE G APP., ART. 10, § 9, E.C. 7–26 (Vernon 1989).

Although appellant's trial counsel may have sincerely believed he was forced to choose between zealously representing appellant and remaining ethical, the following discussion reveals that the trial court did not abuse its discretion in denying counsel's motion to withdraw. First, there is no record evidence that Bearcat's latter statement would be false or perjured and counsel never stated that Bearcat expressly informed him that his intended trial testimony would be untrue. *See e.g. Maddox v. State,* 613 S.W.2d 275, 283 (Tex.Crim.App. 1980). *See also, U.S. ex. rel. Wilcox v. Johnson,* 555 F.2d 115 (3rd Cir.1977); *Johns v. Smyth,* 176 F.Supp. 949 (E.D.Va. 1959). Second, counsel's belief that he would be forced to call Bearcat as a witness and thereby suborn to perjury because appellant told him to do so, is without merit. It is the trial counsel's prerogative, as a matter of trial strategy, to decide which witnesses to call and not that of the client. *People v. Williams,* 2 Cal.3d 894, 905, 88 Cal.Rptr. 208, 215, 471 P.2d 1008, 1015 (1970), *cert. denied,* 401 U.S. 919, 91 S.Ct. 903, 27 L.Ed.2d 821 (1971) (whether to call certain witnesses is generally a matter of trial tactics as to which an attorney may ordinarily waive his client's rights); *People v. Schultheis,* 638 P.2d 8, 11 (Colo.1981) (counsel was correct in refusing to call witnesses which defendant located to support his spurious defense of alibi). *Accord, Nix v. Whiteside,* 475 U.S. 157, 172, 106 S.Ct. 988, 997, 89 L.Ed.2d 123 (1986). Third, counsel could, alternatively, comply with appellant's desire to call Bearcat as a witness. Importantly, the record reveals that trial counsel never testified to appellant's awareness that Bearcat's recantation would be perjury on the stand. Counsel could therefore have warned Bearcat of the penalty of perjury and the possibility of impeachment with the earlier statement should he choose to take the stand. TEX.R. CRIM.Evid. 607. Fourth, although not recommended, counsel could allow Bearcat to give a narrative of what he witnessed rather than counsel participating in direct

questioning. *Maddox,* 613 S.W.2d at 284. *But see* B'Appel, *Symposium: Limitations on the Effectiveness of Criminal Defense Counsel: Legitimate Means or Chilling Wedges? The Limited Impact of Nix v. Whiteside on Attorney—Client Relations,* 136 U.Pa.L.Rev. 1913 (1988). Counsel could further avoid giving credence to such narrative by omitting it from closing arguments. *Maddox,* 613 S.W.2d at 282.

Last, there is the high degree of possibility of error by counsel in his judgment regarding Bearcat's credibility. It is disturbingly apparent that Bearcat's first statement was given after a subtle invitation by counsel as to the means of avoiding the witness stand if he were an unwilling witness. Bearcat was an unwilling witness. However, by the next day, he had apparently changed his mind. Thus, from the scenario stated by counsel, it stands to reason that Bearcat may have had a change of heart or, alternatively, a change of recollection by the time of trial. In *Nix v. Whiteside,* 475 U.S. 157, 191, 106 S.Ct. 988, 1007, 89 L.Ed.2d 123, Justice Stevens discussed the problem regarding the attorney's role as an officer of the court and the attorney's view regarding changes in witness' testimony:

> A lawyer's certainty that a change in ... recollection is a harbinger of intended perjury—as well as judicial review of such apparent certainty—should be tempered by the realization that, after reflection, the most honest witness may recall (or sincerely believes he recalls) details that he previously overlooked.

Although trial counsel may have disbelieved Bearcat's contemplated testimony, such disbelief must be tempered with the realization that this witness, while on the witness stand, might recall pertinent details of the case in a different light. For these reasons, trial counsel's beliefs, without more, did not support automatic withdrawal. *Cf. Wilcox v. Johnson,* 555 F.2d 115 (3rd Cir.1977); *Lowery v. Cardwell,* 575 F.2d 727 (9th Cir.1978). The trial court did not err by denying the motion to withdraw. Point of error two is overruled.

In point of error three, appellant contends the trial judge committed reversible error by refusing to disqualify himself as the fact-finder at the trial because he had previously conducted the hearing on counsel's motion to withdraw.

In *Lowery v. Cardwell,* 575 F.2d 727 (9th Cir.1978) the court held that a revelation by trial counsel to the fact-finder that his client, the defendant, will testify or has testified falsely can deny due process. In *Maddox v. State,* the trial judge, out of the jury's presence, heard revelations from the accused's attorneys that the accused intended to commit perjury when he took the witness stand. In reviewing the conviction, the Texas Court of Criminal Appeals, citing *Lowery,* held that such a harmful revelation was obviated because the jury and not the court assessed punishment. *Id.* at 284. *Maddox* and *Lowery* stand for the proposition when counsel reveals to either a judge, sitting as the fact-finder, or a jury his belief that *his client,* the accused, will commit perjury, he has effectively disabled such fact-finder from judging the merits of his client's case.

The situation herein is dissimilar to the situations found in *Maddox* or *Lowery.* At best, the instant case presents an occasion where trial counsel disbelieves the credibility of a witness and not his client, the accused. Appellant's trial counsel never informed the court of his disbelief in appellant's defense but stated only his concern for a witness' testimony *as it may relate to the defense.* Moreover, subsequent to the trial court's ruling on trial counsel's motion to withdraw, and before the case proceeded to trial, another trial judge conducted a hearing on appellant's motion to disqualify. At that hearing, appellant called the challenged trial judge as a witness and questioned him regarding any beliefs or bias the judge harbored which could influence the judge as a fact-finder at appellant's trial. The trial judge testified to his impartiality and lack of bias and stated that he could serve as an objective fact-finder at appellant's trial. This testimony was uncontroverted. Further, it is well-settled that trial judges often hear and disregard less than favorable evidence to-

wards an accused. *Accord, Durrough v. State,* 620 S.W.2d 134, 143 (Tex.Crim.App. 1981). Hence, no error is present regarding the trial judge's failure to disqualify himself as the fact-finder at appellant's trial. Point of error three is overruled.

In point of error four, appellant contends the evidence is insufficient to support his conviction.

The standard of review when the sufficiency of the evidence is challenged is whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Alexander v. State,* 740 S.W.2d 749, 757 (Tex.Crim.App.1987). A review of the facts shows that in August 1987, Jimmy Alvarado and his friend, Manuel Amaya, went to appellant's apartment. During this initial visit, Jimmy looked at appellant's canary, guitar, and record albums. Jimmy and Manuel visited appellant's apartment again that month, sometime prior to August 15, 1987. During this visit, Manuel and Jimmy went into appellant's bedroom to look at a picture. Appellant followed both boys into the bedroom where he orally sodomized them. Appellant gave Jimmy some money when he finished his act. Thereafter, Jimmy was with his brother, Jerry, and another friend on the next occasion that he saw appellant. Appellant offered to sodomize Jimmy, and Jimmy accompanied appellant to his apartment, where this offense was repeated. Jimmy could not recall how many times appellant sodomized him.

Jerry Alvardo also went to appellant's apartment with Manuel Amaya. Jerry viewed the record albums and appellant's canary. Approximately three days before the 1987 school year began, Jerry returned to appellant's place with Jimmy and Manuel. While there, appellant showed Jerry pictures of naked boys. Jimmy also recalled seeing these pictures.

Appellant went into his closet and retrieved what he called "pee-pee money." Appellant offered to sodomize Jerry for money. Jerry was sodomized for about 20 minutes by appellant in Manuel's presence. Jerry received one dollar.

Appellant first contends the evidence is insufficient because there are contradictions in the boys' testimony. However, contradictions in witnesses' testimony does not destroy the sufficiency of the evidence. *Mercado v. State*, 695 S.W.2d 25, 29 (Tex.App.—Corpus Christi 1985) *aff'd as reformed*, 718 S.W.2d 291 (Tex.Crim.App. 1986); *Gonzales v. State*, 659 S.W.2d 62, 53 (Tex.App.—Houston [14th Dist.] 1983, no pet.). That a witness makes some contradictory statements goes to the weight of the evidence and credibility to be given to such witness by the finder of fact. *Penagraph v. State*, 623 S.W.2d 341 (Tex.Crim. App.1981).

Appellant next maintains the evidence of the dates that the charged offenses are stated to have occurred is insufficient to sustain his conviction. The State is not bound by the date upon which an offense is alleged to have occurred. *Williams v. State*, 565 S.W.2d 63, 64 (Tex. Crim.App.1978). A conviction is sustainable upon proof that the alleged offense was committed any time prior to the return of the indictment and within the statute of limitations. *Williams*, 565 S.W.2d at 64.

The indictment in cause number 492764 states that the sexual assault of Jerry Alvarado occurred on or about September 24, 1987. The indictment in cause number 492763 alleges that the assault upon Jimmy Alvarado occurred on or about August 15, 1987. Jimmy Alvarado testified that he was first sodomized by appellant in the later part of August, sometime before August 15, 1987. Jerry was sodomized approximately three days before the beginning of the school year. The evidence establishes that the offenses occurred prior to the return of the indictments and within the period of limitations. TEX.CODE CRIM. PROC.ANN. ART. 12.01 (Vernon Supp.1989).

The evidence sufficiently supports the conviction. That contradictions occurred in the witnesses' testimony does not cause reversible error because it is the fact-finder who assesses the weight and credibility to be placed upon such contradictory testimony. Further, the evidence shows that appellant committed two offenses prior to the

return of the indictment and within the limitation period for such offenses. Point of error four is overruled.

The judgment is affirmed.