Opinion issued November 30, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00946-CR

———————————

Bronwen Nathaniel Turner, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 182nd District Court

Harris County, Texas



Trial Court Case No. 1141460

 



 

MEMORANDUM OPINION

Appellant, Bronwen Nathaniel Turner, was
charged by indictment with capital murder for the deaths of Darren Kennerson
and Raven Smith.[1]  Appellant pleaded not guilty.  A jury found appellant guilty as
charged.  As the State did not seek the
death penalty, the trial court sentenced appellant to life imprisonment.  On appeal, appellant challenges the
sufficiency of the evidence to prove (1) that one of the complainants was
Darren Kennerson; (2) that appellant was the shooter; (3) that he killed Smith;
and (4) that he acted intentionally and knowingly.[2]

We affirm.

                                                                                                                                                    
                       
Background

On the evening of October 13, 2007, Darren Kennerson,
Raven Smith, Koshella Reyna, Melvin Blake, Brandon Maddox, and Jonathan Roy
were at Raven Smith’s apartment, located in an apartment complex off of
Normandy Street in Harris County, Texas. 
At least some of the individuals in the apartment were associated with
the gang known as the Crips, and the apartment complex was known for having a
number of Crips living there.  At one
point, Roy left the apartment and encountered Gleason Rousell, a member of the
gang known as the Bloods.  Rousell asked
Roy, “What’s popping?”  The testimony at trial
established that this is a phrase used by the Bloods to identify their gang
membership and to challenge members of other gangs.  

Roy returned to the apartment and notified those in the
apartment what Rousell had said. 
Everyone left the apartment and gathered on the sidewalk along the
parking lot where Roy had encountered Rousell. 
In the parking lot, a sand-colored Toyota Corolla passed by them, turned
around, and came back so that the passenger side of the car was facing the
group from the apartment.  A hand holding
a gun emerged from the front passenger-side window and shot into the
group.  The car then left the scene.

Kennerson and Smith were each hit by at least one
bullet.  Kennerson was shot in the side,
penetrating through his arm and into his chest. 
He yelled that he had been hit, walked over to the stairway that led to
Smith’s apartment, and sat down.  Shortly
afterwards, Kennerson died, collapsing on the stairway.  Smith was shot in his head, the bullet
penetrating his brain.  He was immediately
rendered unconscious and collapsed on the ground.  After EMS arrived, he was transported to the
hospital.  He died from the gunshot wound
on October 18, 2007.

None of the people with Kennerson or Smith were able to
identify the shooter.  Similarly, none of
the physical evidence at the crime scene led to the identification of the
shooter, although the investigators were able to determine that the weapon used
was most likely a revolver, such as a .38 Special or a .357 Magnum.  

Appellant’s identification as the shooter came from the
testimony of Kiana Briones and Doneshia Patrick.  Briones overheard part of a conversation
between her brother and appellant in which appellant told her brother that
appellant had killed two people on Normandy Street and that he had to do it as
a part of his being a member of the Bloods. 
Appellant stated that the people who were killed were Crips.  Briones testified that she remembered
appellant saying the apartment complex was “Glen Wood Forest Lane.”  Smith and Kennerson were shot at the Wood
Forest Glen apartment complex.  Counsel
for the State asked if the name of the complex was “[s]omething like Wood
Forest Glen,” Briones said, “Uh-huh.”

Patrick was the girlfriend of Briones’s brother at the
time.  On the night of the shooting,
Patrick had been at her boyfriend’s apartment. 
She was in a back room of the apartment when she came out and saw
appellant and Rousell talking to her boyfriend. 
On the table in the room with them was a .357 revolver, which was one of
the weapons that investigators testified was most likely used in the
shooting.  Patrick’s boyfriend had a
similar revolver, but this was not the same one.  Some days later, Patrick was present when
appellant told her boyfriend that he had killed some people because Rousell did
not want to do it and that it was done to gain credibility in their gang.  Appellant said that he shot one of the
persons in the head and one in the side. 
The record shows that Smith was shot in the head and Kennerson was shot
in the side.  Patrick also testified that
appellant said he went to the location with Rousell in Rousell’s grandmother’s
car.

Shirley Rodriguez, Rousell’s grandmother testified that
Rousell was living with her at the time of the shooting and that Rousell had
used her car—a sand-colored Toyota Corolla—on the night of the shooting.  Multiple witnesses to the shooting who
testified at trial identified Rodriguez’s car as similar or identical to the
one used in the shooting.

The jury found appellant guilty of capital murder.

                                                                                                                       
                       
Sufficiency of the Evidence

Appellant argues that the evidence is legally and
factually insufficient to prove (1) that one of the complainants was Darren
Kennerson; (2) that appellant was the shooter; (3) that he killed Smith; and
(4) that he acted intentionally and knowingly.

A.              
Standards of Review and Applicable Legal
Principles

1.                
Sufficiency of the Evidence Standard of Review

Evidence is insufficient to support a conviction when,
considering all the evidence admitted at trial in the light most favorable to
the verdict, a fact finder could not have rationally found that each element of
the charged offense was proven beyond a reasonable doubt.  See Jackson
v. Virginia, 443 U.S. 317, 319 (1979); In re Winship, 397 U.S.
358, 361 (1970); Laster v. State, 275
S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007); see also Brooks v. State, PD-0210-09,
2010 WL 3894613, at *14, 21–22 (Tex.
Crim. App. Oct. 6, 2010) (majority holding legal and factual sufficiency
challenges reviewed under Jackson
standard); Ervin v. State, No.
01-10-00054-CR, 2010 WL 4619329, at *2–4 (Tex. App.—Houston [1st Dist.]
November 10, 2010, no pet. h.) (construing majority holding in Brooks).  The evidence is insufficient under this
standard in two circumstances:  (1) the
record contains no evidence, or merely a “modicum” of evidence, probative of an
element of the offense; or (2) the evidence, viewed in the light most favorable
to the verdict, conclusively establishes a reasonable doubt.  See
Jackson, 443 U.S. at 314, 318 n.11,
320; Laster, 275 S.W.3d at
518.

If an appellate
court finds the evidence insufficient under the Jackson standard, it must reverse the judgment and enter an order
of acquittal.  Tibbs v. Florida, 457 U.S. 31, 41 (1982).  In applying the Jackson standard of review, an appellate court must defer to the
responsibility of the fact finder to fairly resolve conflicts in testimony, to
weigh evidence, and to draw reasonable inferences from the facts.  See Jackson, 443 U.S. at 319; Williams,
235 S.W.3d at 750.  An appellate court presumes that the fact
finder resolved any conflicts in the evidence in favor of the verdict and
defers to that resolution, provided that the resolution is rational.  See
Jackson, 443 U.S. at 326.  An appellate court may not re-evaluate the
weight and credibility of the record evidence and thereby substitute its own
judgment for that of the fact finder.  Williams,
235 S.W.3d at 750.

2.                
Capital Murder

A person commits capital murder if he intentionally or
knowingly causes the death of more than one individual during the same criminal
transaction.  Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003),
§ 19.03(a)(7)(A) (Vernon Supp. 2010). 
“A person acts intentionally . . . when it is his conscious
objective or desire to engage in the conduct or cause the result.”  Tex.
Penal Code Ann. § 6.03(a) (Vernon 2003).  “A person acts knowingly . . . when
he is aware that his conduct is reasonably certain to cause the result.”  Id.
§ 6.03(b).

B.              
Identity of complainant, Darren Kennerson

In his first point of error, appellant correctly asserts
that one of the decedents in the case was identified in the autopsy report as
“Darren Wayne Kennerson II,” while the indictment identified the complainant as
“Darren Kennerson.”  Appellant argues
that the difference between the complainant identified in the indictment and
the full name of the decedent as identified in the autopsy report constitutes a
material variance between the indictment and the evidence that is fatal to a
conviction.

“[W]hen faced with a sufficiency of the evidence claim
based upon a variance between the indictment and the proof, only a ‘material’
variance will render the evidence insufficient.”  Gollihar
v. State, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001).  A variance is material (1) when it fails to
inform the defendant of the charge against him so that it deprives him of the
ability to present an adequate defense, or (2) when it may subject the
defendant to double jeopardy.  Id. at 248 (quoting United States v. Sprick, 233 F.3d 845, 853 (5th Cir. 2000)).  “[T]he ‘law’ as ‘authorized by the
indictment’ must be the statutory elements of the offense . . . as modified by
the charging instrument.”  Curry v. State, 30 S.W.3d 394, 404 (Tex.
Crim. App. 2000).  The victim’s name is
not a required element of murder or capital murder.  See Tex. Penal Code Ann. §§ 19.02,
.03.  However, the indictment must
identify the offense with sufficient specificity so as to bar future
prosecution for the same offense.  Tex. Code Crim. Proc. Ann. art. 21.04
(Vernon 2009).

A variance between the indictment and the proof alleged at
trial would be material if the accused did not know whom he was accused of
injuring or if he was surprised by the proof presented at trial.  See
Fuller v. State, 73 S.W.3d 250, 255 (Tex. Crim. App. 2002).  When a non-statutory fact alleged in the
indictment differs from a fact proven at trial, a material variance between the
two facts will compel acquittal.  See id. at 256–57.

Appellant argues that because the decedent’s father’s name
was Darren Kennerson, the indictment was misleading as to whom he was charged
with murdering.  In alleging the name of
a person necessary to be stated in the indictment, if that person “is known by
two or more names, it shall be sufficient to state either name.”  Tex.
Code Crim. Proc. Ann. art. 21.07 (Vernon 2009).  It was well established at trial that the
decedent, Darren Wayne Kennerson II, was more commonly known as Darren
Kennerson.  Accordingly, the indictment
appropriately identified the decedent as Darren Kennerson.

A variance may also be deemed material if it could subject
the defendant to the possibility of being tried twice for the same crime.  Gollihar,
46 S.W.3d at 257.  When protecting
against double jeopardy in the event of subsequent prosecution, a court may
refer to the entire record and is not restricted to the language used in the
indictment.  Id. at 258 (citing United
States v. Apodaca, 843 F.2d 421, 430 n.3 (10th Cir. 1988).

The decedent’s mother, Veronica Gallegos, testified that
her son’s full name was “Darren Wayne Kennerson II” and that his father was
“Darren Kennerson.”  She also identified
her son as “Darren Kennerson,” however. 
Furthermore, all of the decedent’s friends referred to him as “Darren
Kennerson.”  We hold that there is
sufficient information in the record to foreclose any risk of double jeopardy.

We hold that the evidence was sufficient to identify
Kennerson as one of the complainants.  We
overrule appellant’s first point of error.

C.              
Identity of appellant as the shooter

Appellant next argues that he was prosecuted and convicted
with less than a scintilla of evidence. 
The majority of the evidence and testimony presented by the State
focused on establishing that two people were killed by someone shooting from a
car in an apartment complex on Normandy Street. 
Appellant does not challenge this evidence on appeal.  Instead, in this point of error, appellant
challenges the sufficiency of the evidence that identified him as the shooter.

The State must prove beyond a reasonable doubt the
identity of the defendant as the perpetrator of the crime.  Smith
v. State, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001, pet.
ref’d).  The identity of the accused as
the perpetrator may be proved by direct or circumstantial evidence, or by
inferences drawn from such evidence.  Gardner v. State, 306 S.W.3d 274, 285 (Tex.
Crim. App. 2009).  The State is not
required to foreclose all possible hypothetical scenarios before a defendant
can be charged or found guilty of a crime. 
See Geesa v. State, 820 S.W.2d
154, 161 (Tex. Crim. App. 1991), overruled
on other grounds, Paulson v. State,
28 S.W.3d 570, 573 (Tex. Crim. App. 2000) (rejecting requirement that State
exclude every other reasonable hypothesis than the guilt of the defendant).  Contradictions or conflicts between the
witnesses’ testimony do not destroy the sufficiency of the evidence; rather,
they relate to the weight of the evidence and the credibility the jury assigns
the witnesses.  Weisinger v. State, 775 S.W.2d 424, 429 (Tex. App. Houston [14th
Dist.] 1989, pet. ref’d).

Appellant’s identification as the shooter came from the
testimony of Kiana Briones and Doneshia Patrick.  Briones overheard part of a conversation
between her brother and appellant in which appellant told her brother that
appellant had killed two people on Normandy Street and that he had to do it as
a part of his being a member of the Bloods. 
Appellant stated that the people who were killed were Crips.  Briones testified that she remembered
appellant saying the apartment complex was “Glen Wood Forest Lane.”  Smith and Kennerson were shot at the Wood
Forest Glen apartment complex.  Counsel
for the State asked if the name of the complex was “[s]omething like Wood
Forest Glen,” Briones said, “Uh-huh.” 
“Uh-huh” is used when the witness answers affirmatively.  Uniform
Format Manual for Texas Court Reporters, 62 Tex. B.J. 583, 592 (1999).[3]

Patrick was the girlfriend of Briones’s brother at the
time.  On the night of the shooting,
Patrick had been at her boyfriend’s apartment. 
She was in a back room of the apartment when she came out and saw appellant
and Rousell there talking to her boyfriend. 
On the table in the room with them was a .357 revolver, which was one of
the weapons that investigators testified was most likely used in the
shooting.  Patrick’s boyfriend had a
similar revolver, but Patrick testified that the revolver on the table was not his.  Some days later, Patrick was present when
appellant told her boyfriend that he had killed some people because Rousell did
not want to do it and that it was done to gain credibility in their gang.  Appellant said that he shot one of the persons
in the head and one in the side.  The
record shows that Smith was shot in the head and Kennerson was shot in the
side.  Patrick also testified that
appellant said he went to the location with Rousell in Rousell’s grandmother’s
car.

Both Briones and Patrick testified that appellant told Briones’s
brother that he had shot a “black man” and a “Mexican man.”  The autopsy report, which was presented to
the jury, revealed that Raven Smith was African American.  Testimony at trial established that Kennerson,
although also African American, was known by the nickname “Mexican D.”

In addition, Shirley Rodriguez, Rousell’s grandmother
testified that Rousell was living with her at the time of the shooting and that
Rousell had used her car—a sand-colored Toyota Corolla—on the night of the
shooting.  Multiple witnesses to the
shooting who testified at trial identified Rodriguez’s car as similar or
identical to the one used in the shooting.

Appellant asserts that Patrick’s testimony was
inconsistent based on her testimony that appellant had said that he got out of
the vehicle, stood up, and started shooting.[4]  In her initial statement to the authorities,
Patrick stated that appellant had said that he got out of his vehicle, stood
up, and started shooting.  We agree with
appellant that this is inconsistent with the testimony of the witnesses to the
shooting that said the shooter never got out of the car.  We disagree, however, that this conflict
renders the evidence insufficient to support the verdict.  See
Weisinger, 775 S.W.2d at 429.

Finally, appellant asserts that (1) there was no physical
evidence linking him to either of the complainants or the scene of the
shootings; (2) no evidence resulted from the investigation of the crime that
linked appellant to the crime; (3) there was no evidence that appellant was
associated with the complainants; (4) no eye witness identified appellant as
being at the scene of the shooting; (5) no one identified the license plate
number of the get-away car; (6) the investigating officers failed to adequately
speak to eyewitnesses or search the area for possible fugitives; and (7) the
investigating officers failed to search a certain cell phone for possible
relevant information.

None of the evidence that appellant asserts was lacking at
trial and none of the inadequacies of the investigation that appellant claims
to exist—even if taken as true—undermine the adequacy of the evidence that was
presented at trial.  Direct evidence is
not required to identify a defendant as the perpetrator of the crime.  See Gardner,
306 S.W.3d at 285 (holding identity may be proven by direct evidence,
circumstantial evidence, or inference). 
Nor is there any requirement that all possible hypothetical scenarios be
foreclosed before a defendant can be charged or found guilty of a crime.  See
Geesa, 820 S.W.2d at 161 (disavowing requirement that State exclude every
other reasonable hypothesis than the guilt of the defendant).

We hold that, cumulatively, the evidence was sufficient to
identify appellant as the shooter.  We
overrule appellant’s second point of error.

D.              
Death of Smith

In his third point of error, appellant argues that the
evidence was insufficient to establish that he murdered Smith.  Appellant bases this argument on the fact
that the evidence established that the shot that ultimately killed Smith
travelled from the rear of his head towards the front in an upwards trajectory.[5]  Appellant asserts that the evidence shows
that, at the time of the shooting, Smith was facing the parking lot.  As a result, appellant argues, the bullet
that killed Smith must have come from a different location than the parking
lot.

Appellant does not cite to any portion of the record that
establishes that Smith was facing the parking lot at the time of the
shooting.  In fact, there is no such
evidence in the record.  Because the
record does not support appellant’s argument, we overrule appellant’s third
point of error.

E.              
Intentional or knowing

In his final point of error, appellant argues that the
evidence is insufficient to prove that he acted intentionally or knowingly.  The State charged appellant with capital
murder by alleging that he intentionally or knowingly caused the death of
Kennerson and Smith in the same criminal transaction.  See
Tex. Penal Code Ann. §§ 19.02(b)(1),
19.03(a)(7)(A).

“A person acts intentionally . . . when it is
his conscious objective or desire to engage in the conduct or cause the result.”
Tex. Penal Code Ann. § 6.03(a)
(Vernon 2003).  “A person acts knowingly . . .
when he is aware that his conduct is reasonably certain to cause the result.”  Id.
§ 6.03(b).  A person is guilty of
murder if he intentionally or knowingly fires a weapon into a crowd of people
and at least one of the persons in the crowd dies.  Medina
v. State, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999).

Reyna was one of the trial witnesses who was present at
the time of the shooting.  On direct
examination, the following exchange occurred:

Q:      Do you
know if the gun was outside the window?

A:      It was
outside, hanging outside the window.  No
face was showing.  No aiming.  Just shoot everybody.

Q:      How
many people were standing there?

A:      It had
to be, like, seven, eight people standing in one small group.  And everybody just started going every which
way.

On cross-examination, the following exchange occurred:

Q:      All
right.  And, so, indiscriminately they’re
firing in y’all’s direction, correct?

A:      Yes.

Q:      The
person who has the -- there’s one person with a gun, correct?

A:      Correct.

Q:      All
right. And that person is firing indiscriminately in y’all’s direction, correct?

A:      Yes.

Q:      All
right.  Indiscriminately, even
recklessly, correct?

A:      Yes.

On redirect examination, the following exchange occurred:

Q:      Are
you saying that somebody wasn’t intending to shoot that gun at y’all?

A:      Was
they intending? Yes, they intended.

. . . .

A:      They
intended to shoot the gun because they shot it.

Q:      Well,
if --

A:      And
they stopped in front of us to shoot at us directly.

Based on Reyna’s cross-examination testimony, appellant
argues that the evidence shows that he did not cause the death of Kennerson or
Smith intentionally or knowingly.  Taken
as a whole, Reyna’s testimony establishes that the shooter fired
indiscriminately into the group but intended to shoot at the group.  A person is guilty of murder if he
intentionally or knowingly fires a weapon into a crowd of people and at least
one of the persons in the crowd dies.  Medina, 7 S.W.3d at 640.  The testimony from the witnesses to the
shooting, including Reyna, established that the shooter fired directly at the
group.  This is sufficient to establish
that the shooter intentionally or knowingly caused the death of two of the
people in that group.  Id. 
We overrule appellant’s final point of error.

                                                                                                                                                       
                       
Conclusion

The evidence at trial was sufficient to establish that
appellant intentionally or knowingly caused the death of Kennerson and Smith in
the same criminal transaction.  We affirm
the judgment of the trial court.

                                                                   

                                                                   Laura
Carter Higley

                                                                   Justice

                                                                   

 

 

Panel consists
of Justices Keyes, Higley, and
Bland.

 

Do
not publish.  See Tex. R. App. P.
47.2(b).











[1]           See Tex. Penal Code Ann. § 19.02(b)(1)
(Vernon 2003), § 19.03(a)(7)(A) (Vernon Supp. 2010). 

 





[2]           Under the Issues Presented portion of
his brief, appellant identifies seven points of error.  The first six points of error track the
elements of capital murder and murder, generally asserting legal and factual
sufficiency points of error for each of the offenses.  The seventh point of error asserts that the
trial court erred in overruling appellant’s request for an instructed verdict
of acquittal.  These points of error are
not specifically tied into the arguments made in the body of his brief.  Instead, in the Argument portion of his
brief, appellant argues (1) that the evidence is legally insufficient to prove
(a) that one of the complainants was Darren Kennerson, (b) that he was the
shooter, (c) that he killed Smith, and (d) that he acted intentionally and
knowingly; (2) that, for the same reasons, the trial court should have granted
appellant’s motion for instructed verdict; and (3) that, for the same reasons,
the evidence was factually insufficient. 
Appellant does not present new arguments under his sections on
instructed verdict and factual sufficiency. 
Instead he refers back to his argument under his section on legal
sufficiency.  Accordingly we consider the
four points raised under appellant’s section on legal sufficiency as his points
of error.





[3]           The Texas Court of Criminal Appeals
adopted the Uniform Format Manual for Texas Court Reporters in 1999.  Merritt
v. State, No. 14-09-00396-CR, 14-09-00397-CR, 2010 WL 2649941, at *5 n.2
(Tex. App.—Houston [14th Dist.] July 6, 2010, no pet.).





[4]           Appellant appears to argue that
Briones’s and Patrick’s testimony are not trustworthy because they vary from
each other.  This is not a relevant
matter because Briones and Patrick testified about separate conversations and
none of the details conflict in any material terms.  See
Weisinger v. State, 775 S.W.2d 424,
429 (Tex. App. Houston [14th Dist.] 1989, pet. ref’d) (holding contradictions
or conflicts between witnesses’ testimony relate to the weight of evidence and
credibility jury assigns witnesses, not sufficiency of evidence).





[5]           While most of the bullet never
penetrated Smith’s skull or brain, some of the bullet fragments did penetrate
his skull and brain, ultimately causing his death.