**Opinion issued October 6, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-01056-CR

————————————

## GREGORY JAMES SHELTON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Case No. 71889**

---

## MEMORANDUM OPINION

Appellant, Gregory James Shelton, was charged by indictment with the offense of murder.[1] Appellant pled not guilty. The jury found him guilty and assessed punishment at life imprisonment. In two issues, Appellant argues that the

---

[1] TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2011).

trial court committed reversible error by denying his *Batson* challenge and that he received ineffective assistance of counsel.

We affirm.

## Background

Appellant was charged with the murder of Edward Rivera. The trial court appointed Cary Faden as Appellant's trial counsel. Faden requested and obtained a psychiatric examination of Appellant. Dr. David Axelrad and Dr. Kit Harrison examined Appellant.

Dr. Axelrad prepared a report. In his report, he determined that Appellant had a history of a bipolar disorder. He also determined, however, that the disorder was "in partial remission," would not impair his ability to control himself during the trial, and only "mildly impaired his ability to control his behavior." Dr. Axelrad determined that Appellant also had "a prior history of Posttraumatic Stress Disorder, but he does not exhibit any evidence of a Posttraumatic Stress Disorder based upon [his] mental status evaluation." In short, the doctor determined that Appellant "did not appear to have an active form of his psychiatric disorder at the time of the commission of the offense in this matter."

Dr. Harrison prepared an outline of his findings. That outline indicated that Appellant had a history of bipolar disorder. It contained no indications of his current mental health other than to say Appellant had "Treatable Disorders."

2

Appellant subsequently retained Kenneth Cager as his trial counsel. As part of wrapping up his representation, Faden turned over the information he received about Appellant's psychiatric evaluations to Cager.

After voir dire, the State used a peremptory strike to exclude the only remaining African American from the jury, identified by the parties as "Juror No. 4." Appellant is also African American. Appellant raised a *Batson* challenge to the exclusion of the potential juror, arguing there was no reason to strike him other than his race.

The State raised two grounds for striking the potential juror. First, the State asserted that he wore a t-shirt with a motorcycle on it, "consistent with biker-type wear." The prosecutor told the trial court, "[W]e've had in the past with other individuals who are associated with motorcycles and bikers and that type of thing, is they seem to be free-spirited individuals and following the law is sometimes not always in their first nature."

Second, during voir dire, the potential juror said in response to questions about the Appellant's right not to testify that if he (the potential juror) were the defendant, he would want to testify. The potential juror acknowledged that this was just his opinion and that he would not hold it against Appellant for not testifying. Nevertheless, the prosecutor said this indicated that, despite his assurances to the

contrary, Juror No. 4 might consider Appellant's decision not to testify as evidence against him. The trial court denied the *Batson* challenge.

After the trial, Appellant retained new counsel, who filed a motion for new trial. As part of the motion, Appellant argued that Cager committed ineffective assistance of counsel for failing to introduce evidence of his bipolar disorder during the punishment phase of the trial. Appellant introduced the report and outline prepared by the doctors. He also introduced voluminous medical records which indicated, among other things, a bipolar disorder diagnosis of Appellant in 2010 and 2011.

Cager testified at the hearing. Cager stated that he did not call Dr. Axelrad or Dr. Harrison as part of his trial strategy. He decided Appellant's mental health was not significant enough to raise during punishment based on conversations with Appellant about his mental health and based on his own experience as an attorney.

### *Batson* Challenge

In his first issue on appeal, Appellant argues that the court erred in denying his *Batson* challenge because the State used a peremptory challenge to eliminate the only remaining African American in the jury pool.

### A. Standard of Review

The Equal Protection Clause guarantees a defendant that the State will not exclude members from the jury venire on accounts of race, or on the false assumption

that members of his race as a group are not qualified to serve as jurors. *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717 (1986) (internal citations omitted). A defendant's challenge to a peremptory strike under *Batson* is a three-step process. *Purkett v. Elem*, 514 U.S. 765, 767–68, 115 S. Ct. 1769, 1170–71 (1995). First, the defendant must present prima facie evidence that the strike was made on an impermissible basis such as race or sex. *Id.* at 767, 115 S. Ct. at 1170. Once a prima facie case has been presented, the burden of production shifts to the proponent of the strike to come forward with a race neutral explanation, meaning a "clear and reasonably specific explanation of his legitimate reasons for exercising the challenge." *Miller-El v. Dretke*, 545 U.S. 231, 239, 125 S. Ct. 2317, 2324–25 (2005). If a race neutral explanation has been offered, then it is the trial court's duty to determine if the defendant has established purposeful discrimination. *Purkett* 514 U.S. at 767, 115 S. Ct. at 1770–71. Throughout the challenge, the burden of persuasion remains with the defendant. *Moore v. State*, 265 S.W.3d 73, 78 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

Jury selection is reviewed from a cold record. *Satterwhite v. State*, 858 S.W.2d 412, 415 (Tex. Crim. App. 1993). The court of appeals must look at the genuineness of the prosecution's asserted race-neutral explanation, not at its reasonableness. *Gibson v. State*, 144 S.W.3d 530, 533–34 (Tex. Crim. App. 2004). We apply a "clearly erroneous" standard of appellate review of a trial court's ruling

in a *Batson* claim. *Id.* at 534. To hold the trial court's decision was clearly erroneous, the appellate court must be left with a definite and firm conviction that a mistake has been committed. *Goldberg v. State*, 95 S.W.3d 345, 385 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

**B.** **Analysis**

Shelton's issue arises from the State eliminating juror number four, who was the only African American left in the potential jury pool after all challenges for cause had been raised and settled. The State raised two grounds for striking the potential juror. First, the State asserted that the potential juror's clothes indicated some association with a motorcycle group. The prosecutor told the trial court that his experience had led him to believe motorcycle groups were more "free spirited" and less inclined to follow the law. Second, during voir dire, the prosecutor mentioned the potential juror's statements that, if he were on trial, he would want to testify. The prosecutor said this indicated that, despite his assurances to the contrary, he might consider Appellant's decision not to testify as evidence against him.

A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. *See Hernandez v. New York*, 500 U.S. 352, 360, 111 S. Ct. 1859, 1866 (1991). Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. *Id.* The State's offered explanation for excluding Juror No. 4 did not focus

on his race, but on whether he could be an impartial juror and follow the law. There is nothing in the record on voir dire that leaves us with a definite and firm conviction that a mistake had been made by the trial court's decision to overrule Appellant's *Batson* challenge. *See Purkett*, 514 U.S. at 769, 115 S. Ct. at 1171 (holding striking juror for having "long, unkempt hair, a mustache, and a beard is race neutral"); *Umoja v. State*, 965 S.W.2d 3, 9–10 (Tex. App.—Ft. Worth 1997 no pet.) (holding that juror struck for answer that showed juror was more favorable to rehabilitation than punishment is facially race-neutral and does not show discriminatory intent or clear error).

Appellant's response to the State's explanation was that the potential juror had rehabilitated himself and could not have been struck for cause. He also argued that he was "pretty sure the jury pool that we have now, quite a few of them have bikes." Being "pretty sure" that other jurors owned motorcycles did not establish purposeful discrimination. Likewise, arguing that the juror could not have been struck for cause does not invalidate a concern about the juror's willingness to follow the law. *See Moore*, 265 S.W.3d at 78 (holding, throughout *Batson* challenge, burden of persuasion remains with defendant).

We overrule Appellant's first issue.

**Ineffective Assistance of Counsel**

In his second issue on appeal, Shelton argues that he received ineffective assistance of counsel at the punishment phase of trial because his trial counsel did not introduce medical records that suggested that Appellant had a history of mental illness.

## A.    Standard of Review

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. *See* U.S. CONST. amend. VI. To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Andrews*, 159 S.W.3d at 101.

An appellant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record,

and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* at 814. We presume that a counsel's conduct falls within the wide range of reasonable professional assistance, and we will find a counsel's performance deficient only if the conduct is so outrageous that no competent attorney would have engaged in it. *Andrews*, 159 S.W.3d at 101.

"In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Demonstrating ineffective assistance of counsel on direct appeal is "a difficult hurdle to overcome." *Id.* In order to establish it, "the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.*

After proving error, the appellant must affirmatively prove prejudice from the deficient performance of his attorney. *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); *Burruss v. State*, 20 S.W.3d 179, 186 (Tex. App.— Texarkana 2000, pet. ref'd). The appellant must prove that his attorney's errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial. *Burruss*, 20 S.W.3d at 186. It is not enough for the appellant to show that the errors had some conceivable effect on the outcome of the

proceedings. *Id.* He must show that there is a reasonable probability that, but for his attorney's errors, the jury would have had a reasonable doubt about his guilt or that the extent of his punishment would have been less. *See id.*; *see also Bone v. State*, 77 S.W.3d 828, 836–37 (Tex. Crim. App. 2002).

**B.     Analysis**

Appellant claims that he was denied effective assistance of counsel when his retained trial counsel failed to present psychological evaluations at the punishment phase of trial as a mitigating factor in punishment. Appellant argues that his diagnoses of bipolar disorder and posttraumatic stress disorder could have been used as mitigating evidence during the punishment, but he does not explain exactly how the evidence would have been mitigating. His medical records indicated that Appellant had been diagnosed with bipolar disorder in 2010 and 2011, but do not describe its severity or effect on Appellant. Dr. Axelrad determined in his report that Appellant's bipolar disorder was "in partial remission" and that Appellant "did not appear to have an active form of his psychiatric disorder at the time of the commission of the offense in this matter." Dr. Harrison's outline indicated that Appellant had a history of bipolar disorder but contained no further information other than to say Appellant had "Treatable Disorders."

The only evidence of posttraumatic stress disorder came from Dr. Axelrad's report. In it, he recognized Appellant had a prior history with the disorder. Dr.

Axelrad concluded, however, that Appellant "does not exhibit any evidence of a Posttraumatic Stress Disorder based upon [his] mental status evaluation."

Cager testified that he did not call Dr. Axelrad or Dr. Harrison as part of his trial strategy. He decided Appellant's mental health was not significant enough to raise during punishment based on conversations with Appellant about his mental health and based on his own experience as an attorney. "It is trial counsel's prerogative, as a matter of trial strategy, to decide what witnesses to call." *Weisinger v. State*, 775 S.W.2d 424, 427 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd). Appellant has failed to establish that evidence of his medical history was so necessary as mitigation evidence as to deny his counsel any discretion in choosing whether to present it.

We overrule Appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).