Adam TURNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–94–01071–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 27, 1996.

Herb H. Ritchie, Greg Glass, Houston, for appellant.

Keli Pool Roper, Houston, for appellee.

Before MURPHY, C.J., and AMIDEI and O'NEILL, JJ.

## OPINION

AMIDEI, Justice.

Adam Turner appeals from a conviction by a jury for assault. The trial court assessed his punishment at one year in the county jail, probated for two years. In one point of error, appellant contends ineffective assistance of his retained trial counsel. We affirm.

On May 6, 1994, at about 6:00 p.m., appellant arrived at the apartment of his ex-wife, Carol, to pick up his son for the weekend. Carol testified that she was in her apartment talking on the telephone to her friend, Judy Fuller, when appellant knocked at the door. She told Judy to wait while she went to the door to see who was there. She observed appellant in the door "peep hole" and went to the telephone and told Judy that it was appellant at the door and asked her to wait on the line while she talked to him. Carol put the telephone down by the front door and opened the door to admit appellant. Appellant told Carol he was there to pick up their son because it was his weekend. Carol told appellant that it was Mother's Day and that it was not his turn. Appellant yelled at her and threatened to kill her and the boy. Appellant then grabbed her by the throat and pushed her head into the apartment wall. He then struck her about the face and head with his hand several times and left the apartment. Carol went to the telephone and asked Judy to call the police. Judy lived a few apartments away and ran over to Carol's apartment to help Carol and arrived within five minutes. Carol then went to Methodist Hospital emergency room and called her private physician, Dr. Annette Howard, for treatment. Dr. Howard arrived at the hospital and treated her for a large hematoma to the frontal part of her head and released her at about 10:00 p.m.

Judy Fuller testified that she had been on the telephone talking to Carol and heard the knocking on the front door. Judy heard appellant yelling obscenities at Carol and heard him threaten to kill her and the boy. She heard thumps and crashes and then Carol came on the line again and asked her to call the police, which she did. Judy and another person took several photographs of Carol to show the facial injuries and particularly a black eye Carol suffered as a result of the assault. Judy testified that when she arrived at Carol's apartment, she observed a "big hickey" on Carol's head and that it was swollen. Judy also testified that Carol was hysterical and crying.

Appellant testified that he went to Carol's house to pick up his son and that there was a misunderstanding over the visitation rights that weekend. Appellant testified that he talked to Carol about their son's education while standing outside at the front door. Appellant said he was talking and gesturing with his hands when she scratched his right arm. Appellant then suggested they go inside and talk sensibly about their son. The two of them went into Carol's apartment and Carol grabbed the straps of appellant's tank shirt. Appellant then stated he bit Carol's hand and departed. He denied hitting Carol or pushing her head against the wall and had no explanation for the photographs of Carol depicting a large, black eye. He told his trial counsel that he suspected that Carol was fabricating the injuries and the assault to use against him in a pending custody matter in family court. He told trial counsel he believed she lied about the assault, possibly altered the photographs somehow to show the black eye, conspired with her doctor to falsify the report of injuries, and the injuries to Carol could have been self-inflicted.

Appellant's witness, Richard Alexander, testified that he drove his car to Carol's apartment and waited out front in his car and had a good view of the front door. He stated that appellant knocked on the door which Carol opened and they talked "for about a

minute." Appellant then lifted his hand and Carol scratched his arm. Appellant went in the apartment and came out about twenty seconds later. Appellant walked up to Alexander's car and Alexander observed scratches on appellant's chest and arm. Alexander testified that both he and appellant left Carol's apartment in one car. At the hearing on the motion for new trial, Alexander testified that they went to Carol's apartment and departed in two separate vehicles.

In sub-point one to his sole point of error, appellant contends he received ineffective assistance of counsel in that trial counsel did no pretrial investigation or preparation.

Appellant argues that his trial counsel: (1) relied solely upon the state's file and did no pretrial investigation of his own; (2) was unaware of appellant's version of the facts and never met with appellant; (3) was unaware of the simplest of facts such as appellant's son was not born until three years after the divorce and Alexander and appellant were in two cars when they left Carol's apartment; (4) failed to interview Alexander which resulted in improper argument by the prosecutor to the jury that Alexander was appellant's "getaway driver"; and (5) did not subpoena Dr. Howard or any character witnesses for appellant.

■ A defendant in a criminal case is entitled to reasonably effective assistance of counsel. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex.Crim.App.1980). Texas follows the federal standard enunciated in *Strickland v. Washington* in deciding whether a defendant has received effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that standard, a defendant must show: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Essentially, appellant must show that: (1) counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. *Id.* A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App. 1992), *cert. denied*, 506 U.S. 885, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992).

■ Judicial scrutiny of counsel's performance must be highly deferential. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. An ineffectiveness claim cannot be demonstrated by isolating one portion of counsel's representation. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Therefore, in determining whether the *Strickland* test has been met, counsel's performance must be judged on the totality of the representation. *Strickland*, 466 U.S. at 670, 104 S.Ct. at 2056. The defendant must prove ineffective assistance of counsel by a preponderance of the evidence. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex.Crim.App.1984).

The *Strickland* standard has never been interpreted to mean that an accused is entitled to perfect or errorless representation. *McFarland*, 845 S.W.2d at 843. Isolated instances of error do not render counsel's performance ineffective, nor can an ineffective assistance of counsel claim be established by isolating for examination one portion of counsel's performance. *Id.*

■ The record of the hearing on appellant's motion for new trial reflects that appellant's trial counsel, Garrett, testified as to his handling of the case. He testified that he was retained by appellant about six weeks prior to the trial and talked to appellant about his case on the telephone. The case was not complex and involved a "swearing match" between appellant and his ex-wife, Carol. Garrett testified that the state had an open file policy and no discovery was necessary since everything the state was going to use as evidence in the trial was made available to the defense attorneys. Garrett testified he thoroughly familiarized himself with the state's file, the statements therein,

and the photographs of Carol depicting her facial injuries and a black eye. The state also furnished Garrett with the complete medical report prepared by Dr. Howard on her examination of Carol at the Methodist Hospital together with the records of X-rays and billing by the hospital. Garrett talked to appellant and Alexander on the telephone and in the hall before the trial and became thoroughly familiar with appellant's version of the case. Garrett stated that appellant believed his ex-wife Carol was fabricating the assault and the injuries to use against appellant in their custody case in family court. Appellant told Garrett that he believed Carol's facial swelling could have been due to food allergies or the injuries could have been self-inflicted. Appellant further suggested to Garrett that the photographs were falsified somehow to show Carol's black eye. Appellant further told Garrett he believed Carol and Dr. Howard were conspiring to create a false medical report that would be used against him in the family court. Garrett testified that the evidence against appellant was very strong and that Garrett would have a difficult time in making this defense of falsification of injuries a viable defense to present to a jury. Garrett further testified that the O.J. Simpson trial in California had created a public awareness of spousal abuse and he did not want to offend any jury members. He did not subpoena Dr. Howard because he knew that Dr. Howard and Carol had a personal relationship, worked together at the same hospital, and Carol was Dr. Howard's regular patient. Garrett felt that the medical report would adequately explain the injuries and that Dr. Howard would be hostile towards appellant if she testified at the trial. Garrett did not call the character witnesses to the stand during the trial because they knew nothing of the facts of the assault and could not contribute to appellant's defense, other than testifying as to his good reputation for truth and peacefulness.

Appellant's claim that Garrett conducted no independent investigation of his case is not supported by the record. Reasonable professional judgment supported any limitations on investigation in this case. *Wilkerson*, 726 S.W.2d at 549–550. The record does not show that Garrett's failure to per-

sonally interview witnesses prejudiced appellant's defense. The record shows Garrett was familiar with appellant's version of the facts but did not agree with appellant's theory of fabrication by Carol of the entire incident. Appellant's defense to the effect that Carol was fabricating the entire incident to make him look bad in another court was not a viable defense that a jury would accept in view of the overwhelming evidence of appellant's guilt. Garrett did not create a false impression for the jury by his investigation of Alexander's story of going to Carol's in his car and then leaving in two separate cars. Alexander testified at the trial that both he and appellant left together in his car; however, he changed the story at appellant's hearing on the motion for new trial. The argument by the prosecutor that appellant used Alexander as a "getaway driver" would be a reasonable deduction from the evidence or a plea for law enforcement. *Sterling v. State*, 830 S.W.2d 114, 120 (Tex.Crim.App.1992). The failure to summon Dr. Howard and the character witnesses was reasonable since Garrett felt they would not help appellant's defense and Dr. Howard could hurt him. *See Simms v. State*, 848 S.W.2d 754, 758 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd).

Appellant has not produced any evidence showing that counsel's alleged failure to investigate in any manner prejudiced his defense or undermined confidence in the outcome of his case. Dr. Howard testified for appellant's new counsel at the hearing on the motion for new trial. Appellant did not ask Dr. Howard if she felt that Carol was faking her injuries, or if Dr. Howard thought the photographs of the black eye were altered, or that she might be trying to "help" Carol in her case against appellant in the family court, or otherwise develop through Dr. Howard the very defenses he now claims Garrett failed to develop. In fact, appellant in his brief admits that Dr. Howard's testimony would have hurt appellant and not helped him at trial. We find that appellant's trial counsel was not ineffective in his investigation and preparation for trial. We overrule appellant's sub-point of error one.

■ In sub-point of error two, appellant contends that trial counsel was ineffective because his performance at trial was deficient. He argues that Garrett was deficient because: (1) voir dire of the jury was unfocused and inept; (2) he employed no trial strategy on appellant's behalf; (3) he failed to call character witnesses; (4) he failed to lodge a single objection during the trial; (5) he attempted to improperly use a hearsay document (Dr. Howard's medical report); (6) he failed to "adequately" cross-examine the complainant, Carol; (7) he asked improper questions; and (8) his jury argument was ineffective. We disagree.

In appellant's sub-point of error two, he argues that Garrett employed poor trial strategy that prejudiced his defense. In his brief, appellant concludes that had counsel not been deficient in the various ways enumerated, then the jury verdict would most likely have been "not guilty." He argues that the record shows ineffectiveness, but he fails to set out what, in his opinion, would have been effective representation that would have produced the "not guilty" verdict. When given the opportunity to develop his defense of falsification of injuries, appellant failed to develop the defense by addressing questions to Dr. Howard at the hearing on appellant's motion for new trial. The record does not reveal any evidence that was overlooked that would have benefitted the defense. The record does not show what evidence, if any, supported appellant's claims of fabrication other than his personal opinion.

■ We will review matters of trial strategy only if an attorney's actions are without any plausible basis. *Simms*, 848 S.W.2d at 757.

It is plausible that counsel, after reviewing the evidence to be presented, decided that the best strategy would be to appear open and honest to the jury in hopes of gaining jury sympathy or mitigating punishment. Garrett testified that the evidence of appellant's guilt was strong and that he felt that to press the untenable defense of fabrication by the complainant of the injuries and the assault could very well prejudice a jury against him. *See Thomas v. State*, 886 S.W.2d 388, 392 (Tex.App.—Houston [1st Dist.] 1994, pet.

ref'd) (failure to object to hearsay testimony may have been a plausible trial strategy);. *See also Varughese v. State*, 892 S.W.2d 186, 196 (Tex.App.—Fort Worth 1994, no pet.) (failure to object was part of a strategy to appear open and honest).

In *Miniel*, 831 S.W.2d at 323, the Court of Criminal Appeals held:

> Counsel's competence is presumed and a defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305, 325 (1986). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making such evaluation we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance i.e., the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

In viewing the totality of appellant's representation at trial, we hold that the assistance of counsel during the trial was within the wide range of reasonable professional assistance and that the challenged actions could be considered sound trial strategy. We overrule appellant's sub-point of error two concerning trial strategy ineffectiveness. We overrule appellant's point of error one.

The judgment of the trial court is affirmed.