IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 22, 2004 Session

## ROY V. SMITH, II v. GRACE HUTCHISON (BLAIR)

Direct Appeal from the Juvenile Court for Dyer County
No. 3134     Charles V. Moore, Jr., Judge

No. W2003-00214-COA-R3-JV - Filed February 25, 2004

Father filed a petition for an initial determination of custody against the Mother. Father alleged that he was the fit and proper person for the custody of the child. Based on the evidence presented at trial, the juvenile court entered a judgment and permanent parenting plan which found that the Mother was more comparatively fit to continue serving as the primary residential caregiver. Father appeals the trial court's judgment. We affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; and
Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Barbara A. Deere and Thomas E. Weakley, Dyersburg, Tennessee, for the appellant, Roy V. Smith, II.

Dean P. Dedmon, Dyersburg, Tennessee, for the appellee, Grace Hutchison (Blair).

## OPINION

On October 25, 1998, Dominic V. Smith (Nic), was born to Roy V. Smith, II (Father) and Grace H. Blair (Mother). Father and Mother never married, but Father acknowledged paternity pursuant to Tenn. Code Ann. §§ 68-3-203(g), 68-3-302, and 68-3-305(b) (2003). For six months, Father, Mother and Nic resided together. Father testified that he subsequently moved to a separate residence where he and Mother agreed to a custody arrangement, which was effective until September 18, 2000. Three days later, Father filed a petition for determination of custody in the juvenile court and alleged that Mother denied him access to the child, threatened arrest for kidnaping, resides with another man out of wedlock, allows alcoholic parties to continue late into the evening, and that Nic is in need of medical treatment.

In November of 2000, the juvenile court entered a parentage order awarding joint custody to the parties with Mother's residence as the primary physical residence pending the outcome of the case. In March of 2001, the Father filed a proposed permanent parenting plan resulting in the court entering a temporary custody order whereby the Mother's residence would remain the primary physical residence and the Father was allowed visitation according to the shared parenting guidelines of the twenty-ninth judicial district of Tennessee. In April of 2002, at the request of Father, the court appointed a *guardian ad litem* whose report was filed with the court in August of the same year. The report concluded:

> Both [Mother and Father] undoubtedly care for and love their son and are each fit to care for him; however, since [Mother] filed for child support and [Father] subsequently filed for custody, the parties' relationship with one another, particularly with respect to their ability to communicate about the care of their son, has deteriorated.
>
> The Guardian ad Litem is concerned solely with Nic's best interests. Based upon the foregoing, it is the opinion of the Guardian Ad Litem that Nic appears to be living in a safe, stable and loving family environment and has done so for approximately 2-3 years. Additionally, it appears that Nic has adjusted to having visitation with his Father.

At the trial of the initial custody determination for Nic, the court heard testimony that Nic was exposed to cigarette smoke and on one occasion, Nic suffered a cigarette burn on his lip. Additionally, the court heard testimony concerning unexplained bruises on Nic's body.[1] After reviewing all the testimony and the record as a whole, the trial court entered its judgment. The court specifically found that the proof offered by the Father was insufficient to prove that Nic had suffered abuse or neglect at the hands of either party. Ultimately, the court found:

> [T]here is a strong presumption in relation to continuity of placement [of Nic with the Mother], such that the [Mother] is more comparatively fit to continue serving as the primary residential caregiver of the minor child, [Nic], as she is living in a nuclear family unit, in contrast to the [Father], who is a single person who works a minimum of five (5) days a week and relies heavily upon his parents for housing and childcare.

In addition to the judgment, the court entered a permanent parenting plan. Father timely filed his notice of appeal.

---

[1] An investigator for the Tennessee Department of Children's Services testified that Nic appeared to have been coaxed by the Father and his paternal step-grandmother into telling people that the Mother's new husband was beating him with a belt. The investigator further testified that she ultimately felt that Nic was neither abused nor under any harm of abuse.

## Issue Presented

The sole issue for this appeal is whether, by the preponderance of the evidence, the trial court should have determined that the Father was comparatively more fit for custody of the minor child, Nic, pursuant to Tenn. Code Ann. §§ 36-6-106, -404(b) (2003), thereby awarding primary physical custody to Father rather than Mother.

## Standard of Review

The standard of our review of a trial court's determination of custody is set forth in *Gaskill v. Gaskill*, 936 S.W.2d 626 (Tenn. Ct. App. 1996):

> Custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves. Accordingly, appellate courts are reluctant to second-guess a trial court's decisions. Trial courts must be able to exercise broad discretion in these matters, but they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law. *D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995). Thus, we review these decisions de novo on the record with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990); *Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992).

*Gaskill*, 936 S.W.2d at 631.

## Initial Custody Determination

It is clear from the judgment of the court that the court viewed this case as the initial determination of custody and used the comparative fitness analysis in determining what was in the best interest of the child. *See* Tenn. Code Ann. § 36-6-106. In the court's analysis, the court stated that "pursuant to *Gaskill v. Gaskill*, 932 S.W.2d 626 (Tenn. Ct. App. 1996), the Court finds that a parent is not to be judged by a standard of perfection, but rather by the standard of a human." Further, "all the allegations of misconduct presented by the [Father] in relation to the [Mother] occurred prior to [Nic's birth] and . . . the allegations are so far removed in time that the Court must look to the present circumstances of the child." Accordingly, the court did not err in its legal analysis.

As for the factual determinations that the trial court made, we are reminded that findings of fact dependent upon the credibility of witnesses should be accorded great weight by appellate courts, as the trial court is in the best position to judge issues of credibility. *Duncan v. Duncan*, 686 S.W.2d 568, 571 (Tenn. Ct. App. 1984). After reviewing the testimony of the parties, the report of the *Guardian ad Litem*, and the record as a whole, the evidence does not preponderate against the findings of the trial court.

## **Conclusion**

In light of the foregoing, we affirm the trial court's judgment awarding primary physical custody to the Mother. Costs of this appeal are taxed to the Appellant, Roy V. Smith, II, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE